KATHERINA LANG

v.

MARGARETHA DIETZ.

*Opinion filed June 19, 1901.*

1. CONTRACTS—*verbal promise to pay mortgage debt as part of consideration is valid.* A verbal promise to pay an existing mortgage debt as part of the consideration in a purchase of the property is an assumption of the mortgage debt, and may be enforced by the grantor or the holder of the mortgage.

2. SAME—*grantee who has assumed mortgage debt cannot dispute consideration for mortgage.* A grantee who, as part of the consideration for the conveyance to him, has assumed a mortgage debt upon the property, is estopped to dispute the validity of the mortgage upon the ground there was no consideration for the mortgage debt; and this estoppel extends to those claiming under him.

*Lang* v. *Dietz*, 93 Ill. App. 148, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

LACKNER, BUTZ & MILLER, for appellant.

NELSON MONROE, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is an appeal from the judgment of the Appellate Court for the First District affirming a decree entered in the superior court of Cook county awarding foreclosure of a trust deed in the nature of a mortgage, on a bill in chancery exhibited by appellee against the appellant and others. The appellant is the widow of one John George Lang, deceased, and the other defendants to the bill were a brother and several nephews and nieces of said deceased, none of whom join in the appeal. The defense sought to be made was and is that there was no

consideration for the note to secure which the mortgage was given.

John George Lang was twice married, but no children were born to him by either wife. His first wife, Susanna Lang, owned lot 12 in Wallar's subdivision of the northeast quarter of section 28, township 39, north, range 14, east of the third principal meridian, in Cook county. The appellee, when but two years of age, was taken into the family of said Susanna and John George Lang and was cared for and treated as their child. She sustained that relation to them until she had reached the age of thirty years, and faithfully served, assisted and cared for them during that period of time. On the 21st day of July, 1893, said Susanna and John George Lang executed a note in the sum of $2000, payable to the appellee five years thereafter, without interest, and on the same day signed and acknowledged a trust deed in the nature of a mortgage on said lot 12, which belonged to the wife, Susanna, as aforesaid, to secure the payment of the note. The decree was rendered to foreclose this trust deed. Susanna Lang died August 7, 1893, about two weeks after the execution of said note and trust deed. John George Lang intermarried with the appellant in about eighteen months after the death of Susanna, his first wife, and died on the 26th day of September, 1896, leaving the appellant his widow but no child or children or descendants thereof him surviving. The appellant and said brother and said nephews and nieces are his legal heirs. The bill in chancery was brought after his death to foreclose the mortgage held by the appellee.

The contention of the appellant is, that said Susanna Lang, being ill and in the expectation of death, executed the note and mortgage as a gratuity,—a mere gift,—to the appellee; that the services rendered by the appellee while so a member of the family of the makers of the note and mortgage were rendered without any express or implied agreement that she was to be compensated

therefor, and without intention on her part to charge for such services or expectation to be paid therefor, and can not be seized upon as constituting a consideration for the note.

A promissory note intended as a gift is but a mere promise to make a gift in the future, and is lacking in consideration. (*Shaw* v. *Camp*, 160 Ill. 425.) The execution of a mortgage to secure such a note does not give it the character of an executed promise or aid to supply a consideration. (*Grove* v. *Jeager*, 60 Ill. 249.) In the absence of an express or implied contract for wages or compensation, the implication of the law is there was no intention on the part of the appellee to charge for her services or assistance, or on the part of said Susanna or John George Lang to pay therefor, or to charge said appellee for her board, clothing or support. (*Miller* v. *Miller*, 16 Ill. 296; *Brush* v. *Blanchard*, 18 id. 46; *Faloon* v. *McIntyre*, 118 id. 292; *Dunlap* v. *Allen*, 90 id. 108.) The case of *Warren* v. *Warren*, 105 Ill. 568, announces no different doctrine, and in principle is not in conflict with the cases above cited. In the *Warren case* compensation was allowed the daughter on the ground the law would imply a contract to compensate her, from facts and circumstances established by the proof.

If it be conceded in the case at bar it was not made to appear in the proofs that there was a contract or understanding, express or implied, the appellee was to be paid for her services, still we think the judgment of the Appellate Court and the decree of the superior court should be upheld. It was proven by the testimony of the notary public who wrote the note and trust deed or mortgage and before whom those instruments were signed and the mortgage acknowledged, that he was called to go to the house of Mr. and Mrs. Lang, and on arriving there found Mrs. Lang ill and confined to her bed. Her husband, John George Lang, was there. Mrs. Lang said to the notary that she was old and sick and did not know but that she

would soon die, and that she intended to give the appellee (whom she called her adopted daughter) something to pay her for her services and labor during the many years she had lived with her and her husband; that she wanted to give her $2000 in cash, and would pay her then but that she did not have the money, and asked the notary if he could not prepare a paper that would secure that sum to the appellee. The notary told her it could be done by a note and trust deed. She directed the notary to prepare the note and trust deed. John George Lang, her husband, objected to giving the note and trust deed, and said to Mrs. Lang that he would take care of the appellee in case of the death of Mrs. Lang. Mrs. Lang said to her husband, in substance, that she could not trust him to pay the money to or take care of the girl; that she believed that if she was dead he would drive the girl away and do nothing for her; that he drank too much, etc., but that she would have the note drawn so that the appellee could not require him to pay it at once. Thereupon the note was drawn payable five years after date, and was signed by Mrs. Lang and her husband, and they both signed and acknowledged the trust deed, and both instruments were left in the possession of Mrs. Lang. On the following day the notary was again called to the house of Mr. and Mrs. Lang, and by her direction prepared a quit-claim deed conveying the same premises covered by the trust deed, from herself to her husband, John George Lang. Mrs. Lang signed the deed and acknowledged it before the notary. She then delivered to the notary the note to the appellee, the trust deed securing it and the quit-claim deed to her husband, with directions to deliver the note and trust deed to the appellee and the said quit-claim deed to her husband, said John George Lang, after her death. These instruments remained in the possession of the notary until after the death of Mrs. Susanna Lang, when he delivered them as directed to do by Mrs. Lang. John George

Lang died seized of the title thus vested in him by this quit-claim deed. The interest of the appellant, the second wife of said John George Lang, in the said premises is such as resulted to her as his wife under the statutes of descent, from his death without leaving child, children or descendants thereof him surviving. If the lien of the trust deed or mortgage was good and effectual as to said John George Lang it would be equally efficacious against her.

On the day preceding that on which said John George Lang received a quit-claim deed for the premises here involved he had joined with his wife in the execution of the note to the appellee and in the execution of the mortgage on the premises to secure that note. It was then fully explained to him that he was expected to make payment of the note; that his verbal agreement to do so would not be taken; that the premises which the wife owned, and which were to be his after the death of the wife, were to be charged with a lien to secure the payment thereof, but that the note would be so drawn that he could not be compelled to pay it until the expiration of five years. He agreed to these conditions, signed the note as one of the principals thereof and signed and acknowledged the mortgage. The note and mortgage were retained by the owner of the property until the quit-claim deed to him was executed, and then the note, the mortgage and the quit-claim deed were delivered together to Mr. Oehmen, the notary public, as aforesaid. The instruments, under all the circumstances, may properly be regarded in equity as but parts of the same instrument,— so far, at least, as to give to the deed the same effect as if it contained a clause requiring the grantee therein to pay the mortgage debt. The quit-claim deed executed to him on the day following the one on which the note and mortgage were made and executed was subject to the payment of the mortgage debt, and he became, by virtue of the deed, the note which he had signed and the mort-

gage in which he had joined, legally liable for the payment of the mortgage indebtedness as fully as if a clause had been inserted in the deed obligating him to make such payment. The payment of the mortgage debt by him was a part of the transaction whereby he obtained title to the lot, and the obligation to pay it was in part the consideration on which the conveyance to him was based.

A verbal promise to pay an existing mortgage debt as part of the purchase money of mortgaged premises is an assumption of the mortgage debt, and may be enforced by the grantor or the holder of the mortgage. (15 Am. & Eng. Ency. of Law,—1st ed.—p. 835.) Here, however, there is more than a mere verbal promise on the part of said John George Lang to pay the debt secured by the mortgage. He signed the note secured by the mortgage and executed the mortgage to secure it. A grantee of land who, as part of the consideration for the conveyance to him, has assumed to pay a mortgage debt on the land so purchased by him, cannot dispute the validity of the mortgage or avoid liability on the ground there was no consideration for the mortgage debt. *Pidgeon* v. *School Trustees,* 44 Ill. 501; 15 Am. & Eng. Ency. of Law,—1st ed.—p. 836; *Freeman* v. *Auld,* 44 N. Y. 50; *Johnson* v. *Thompson,* 129 Mass. 398; *Smith* v. *Graham,* 34 Mich. 305.

The appellant, so far as she succeeded, under the statutes of descent, to the title of said John George Lang in the premises, obtained no greater interest than her husband had, and the estoppel against him to question the validity of the mortgage extended also to her. Her dower rights were such, only, as a widow acquires in land which the husband had mortgaged prior to their marriage, —namely, dower in the surplus remaining after the payment of the mortgage debt. *Virgin* v. *Virgin,* 189 Ill. 144.

The chancellor did not err in rendering the decree nor the Appellate Court in affirming it. The judgment of the Appellate Court is affirmed.        *Judgment affirmed.*