## Michael Kramp et al., Appellees, v. John Kramp et al. Louis Thexton and Elizabeth H. R. Thexton, Appellants.

## Gen. No. 18,905.

1. MORTGAGES, § 56*—*when mortgage assumed by grantee of equity of redemption not void for fraud.* On bill to foreclose a second mortgage, where the facts showed that the premises had subsequently been conveyed subject to incumbrances to one of the defendants who had also conveyed subject to the incumbrances to another defendant, *held* that a defense by the second grantee, that the second mortgage was void for the reason that the complainants and the first grantee had entered into a conspiracy to defraud him by placing a fictitious incumbrance on the property for the purpose of deceiving him as to the value of the property, was not sustained by the evidence.

2. MORTGAGES, § 231*—*when grantee of premises estopped from questioning validity of incumbrance.* A grantee taking a warranty deed with the understanding or agreement that there was a bona fide second mortgage upon the premises in addition to a first mortgage, and that such incumbrances formed a part of the consideration, is estopped from questioning the validity of such second mortgage.

3. MORTGAGES, § 514*—*when court may order receiver to remain in possession and collect rents.* On bill to foreclose a second mortgage, *held* the court did not err in ordering that a receiver theretofore appointed remain in possession to collect the rents, etc., until the further order of the court.

Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Affirmed. Opinion filed March 26, 1914. *Certiorari* denied by Supreme Court (making opinion final).

---

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

Statement by the Court.  This is an appeal by Louis Thexton and Elizabeth H. R. Thexton, his wife, from a decree of sale of certain real estate situated in Chicago, Illinois, entered by the Superior Court of Cook county on July 19, 1912, under a bill to foreclose a second mortgage of $17,000, brought by Michael Kramp and Edwin L. Waugh, trustee, as complainants, against John Kramp, the two Thextons and others as defendants.  The land was improved by a twenty-four flat building, known as the "Stanley Building," occupied by tenants, and there was a first mortgage on the property of $25,000, of which $1,000 had been paid.

The bill was filed on January 15, 1912, and four days thereafter a receiver was appointed by order of the court after due notice.  No appeal was taken from this order.  On February 26th the joint and several answer of the defendants, Louis and Elizabeth H. R. Thexton, was filed, to which complainants filed a replication.  All the other defendants defaulted, and the cause was referred to a master in chancery to take proofs and report the same, together with his conclusions, etc.  On May 31st, the motion of the Thextons for the removal of the receiver was denied.  On July 17th, the master filed his report, together with the testimony taken before him.  He recommended that a decree be entered in accordance with the prayer of the bill.  Both the Thextons and the complainants filed objections to the report before the master, which were overruled, and also exceptions before the court, which were also overruled.  The court approved the master's report, and found that there was due the complainant, Michael Kramp, upon the principal and interest notes mentioned in the bill, the sum of $17,903.33, together with solicitor's fees of $100, or a total sum of $18,003.33, together with costs, and adjudged and decreed that, unless the said sum, with interest upon $17,000 thereof and said costs, be paid to said Michael Kramp within five days, said property be sold by said master in chancery at public sale, after notice, etc., and the court also

ordered that the receiver remain in possession to collect the rents, etc., until the further order of the court.

The material facts of the case, as appears from the evidence introduced before the master, are substantially as follows: On July 1, 1911, the defendant, John Kramp, then being the owner of the property, incumbered by said first mortgage, executed his promissory note of that date wherein, for value received, he promised to pay to the order of himself the principal sum of $17,000, on or before July 1, 1915, with interest thereon at the rate of five and one-half per cent. per annum, payable semiannually, until maturity, and with interest at seven per cent. per annum after maturity, both principal and interest being payable at the office of Edwin L. Waugh, Chicago, or such other place as the legal holder of the note might from time to time appoint. It is stated on the face of the note that the same is secured by a trust deed of even date therewith to said Waugh, trustee, on real estate in Cook county, Illinois. On July 1, 1911, also, John Kramp indorsed said note in blank and retained the same in his possession until about August 7, 1911. This note, when introduced in evidence, also bore the indorsement: "Interest on this note is paid to August 1, 1911."

For the purpose of securing the payment of the principal and interest evidenced by said promissory note, said John Kramp, a widower, of the city of Battle Creek, Michigan, signed a trust deed, dated July 1, 1911, conveying the premises to said Edwin L. Waugh, trustee, in trust, however, subject to a condition of defeasance upon the payment of said principal sum and interest and the performance of the other covenants and agreements in said trust deed contained. It was provided therein that if default be made in the payment of said principal note, or the interest thereon or any part thereof, at the time and in the manner therein specified for the payment thereof, then in such case the whole of said principal sum and interest

should thereupon, at the option of the legal holder of said note, become immediately due and payable; and that, upon the application of the legal holder of the note, it should be lawful for the grantee, or his successor in trust, to enter upon and take possession of the premises, collect and receive rents, file a bill or bills to foreclose, obtain a decree of sale, and out of the proceeds thereof pay all costs, including a solicitor's fee of $100, etc., and pay the principal of said note, and interest due, etc. This trust deed was duly acknowledged before a notary public by said John Kramp on July 29, 1911, and was filed for record in the recorder's office of Cook county on the same day at 9:41 A. M., as document No. 4,802,273, and duly recorded.

Prior to the date of the filing of said trust deed for record, on July 29, 1911, John Kramp had some negotiations with one Thomas H. Kelley relative to the purchase by Kelley of Kramp's equity in said property. These negotiations resulted in the signing of a warranty deed by Kramp, bearing date July 25, 1911, in and by which he, John Kramp, a widower, etc., *"for and in consideration of the sum of $65,000,"* conveyed and warranted to Thomas H. Kelley, of Chicago, Illinois, the said property (describing it), *"subject to two incumbrances, the principals thereof aggregating the sum of $42,000, upon which $1,000 has been paid;* subject also to the taxes for the year 1911, and to all special assessments." This deed was acknowledged by John Kramp on July 29, 1911, before said Edwin L. Waugh as notary public, and was filed for record in the recorder's office of Cook county on the same day, also at 9:41 A. M., as document No. 4,802,274, and duly recorded. It will be noticed that said trust deed to said Edwin L. Waugh, trustee, securing said principal note of $17,000, and said warranty deed to said Kelley, were both acknowledged on July 29, 1911, and were filed for record at the same hour and minute on that day,—the trust deed having the lower document number.

It appears from the testimony of John Kramp, called as a witness for defendants, that, prior to the execution and recording of said warranty deed to Kelley, he and Kelley signed a contract by the terms of which Kramp was to convey the property to Kelley for the consideration named in the contract, and that he (Kramp) subsequently received that consideration. This contract was in the possession of said Waugh. It was produced and handed to the solicitor for the defendants, who examined it. The contract was not introduced in evidence, but it was stipulated by and between the respective solicitors that "the consideration shown in the contract between Thomas H. Kelley and John Kramp, *over and above the mortgages aggregating $41,000,* was 350 shares of capital stock of the American General Agency Company, a corporation under the laws of Illinois, fully paid and non-assessable, *and the interest from August still on the incumbrance.*" It will be noticed that the amount of said principal note of $17,000 and the net amount of $24,000 remaining unpaid on said first mortgage, when added together, equals the sum of $41,000, as mentioned in said contract. As previously stated, the said note when introduced in evidence bore the indorsement that the interest on the same was paid to August 1, 1911. John Kramp testified that this indorsement was made by said Edwin L. Waugh about the time he (Kramp) made the deed to Kelley, that he saw Waugh make the indorsement, that Waugh was Kelley's attorney and that Kelley introduced him to Waugh at the time when he (Kramp) signed said note of $17,000 on July 1, 1911. Edwin L. Waugh testified that he was Kelley's attorney, that Kramp did not have an attorney, that he (Waugh), however, prepared the note of $17,000 and the trust deed and the warranty deed, that he took Kramp's acknowledgment to the warranty deed and that a notary public in his office took Kramp's acknowledgment to the trust deed, that he (Waugh) prepared the papers "so that Thomas H. Kelley would get the

title to the property, as he had contracted to get it,'' that the two incumbrances recited in the warranty deed formed a part of the consideration of $65,000 as recited therein, that "Kelley and Kramp went over and recorded their deeds together," and that it is quite possible that at that time he cautioned Kramp to see that the trust deed was recorded before the warranty deed.

It further appears from the testimony of John Kramp that he purchased the property in question in January, 1908; that on July 1, 1911, the property had cost him approximately $50,000; that he had about $26,000 in the property over and above the $24,000 unpaid on the first mortgage; that on the day he signed and indorsed said note of $17,000, viz.: July 1, 1911, he was indebted to his brother, Michael Kramp, the complainant, in the sum of $6,025; that after he signed the trust deed the same was in the possession of said Waugh, trustee, until it was recorded; that he delivered the note to his brother, Michael Kramp, on the 6th or 7th of August, 1911; that the consideration for the transfer of the note to his brother was $475 in cash, the cancellation of said indebtedness of $6,025, and 100 shares of the capital stock of Swift & Company, which was worth "a little above par at that time"; that he "took the Swift stock for $10,500"; that he received from his brother on August 7th said $475 in cash and 50 shares of said stock, and that he received the other 50 shares during the first part of October, 1911. The complainant, Michael Kramp, testified that he is the owner of the note; that he bought it from his brother, John Kramp, the first part of August, 1911, at which time he received from him the note and trust deed; that one month's interest on the note had been paid before he got the note; that the interest due on January 1, 1912, was not paid and he told said Waugh to start a foreclosure suit, which Waugh shortly thereafter did; that when he bought the note he paid his brother "to the amount near to $17,000"; that "we

figured our balance near to $17,000, * * * and we
made that by taking the amount of money which he
already owed me and adding to that 100 shares of
Swift stock and paying the balance in cash''; that he
first heard of Kelley when he bought the note and first
heard of Dr. Thexton when the interest became due;
that at the time he bought the note he knew that there
was a first mortgage on the property of $24,000, and
believed that the property was worth more than
$17,000 besides the first mortgage, and that he then
considered it worth from $45,000 to $48,000.

It further appears from the evidence that on Novem-
ber 18, 1911, said Thomas H. Kelley and wife made and
executed a warranty deed conveying said premises to
the defendant, Louis Thexton. The deed was acknowl-
edged on the same day before said Edwin L. Waugh,
as notary public, and was filed for record on December
5, 1911. It was recited in the deed that the considera-
tion was $65,000, and that the conveyance was made
"*subject to incumbrances now aggregating $41,000 and
accrued interest thereon,* said incumbrances being pay-
able $1,000 in January and July in each of the years
1912, 1913 and 1914, $1,000 in January, 1915 and
$34,000 in July, 1915; subject also to all taxes and
assessments.''

In their answer to the bill, the defendants, Louis
Thexton and wife, charged that the suit to foreclose
was the result of a conspiracy, between Michael
Kramp, said Waugh and said Kelley, to defraud Louis
Thexton; that they entered into a scheme whereby John
Kramp placed a ''fictitious incumbrance'' (viz., said
note and trust deed) upon the property; and that this
was done for the purpose of deceiving prospective cus-
tomers as to the value of the property. And said de-
fendants stated in said answer that subsequently, in
November, 1911, Kelley represented to Louis Thexton
that the said property was worth $70,000, and offered
to sell or trade it on a valuation of $60,000; that Kelley
further represented to Thexton ''that it was worth a

great deal more than the *apparent incumbrance* upon the same, that the incumbrance *was placed upon the property in good faith,* and that the incumbrance represented actual value in the property;'' and that thereby Thexton was induced to purchase the fee and to convey and trade therefor clear lands of the value in excess of $15,000, etc. Neither the defendant Thexton nor said Kelley testified before the master.

The master in his report found, *inter alia,* that John Kramp, when the owner of said property, executed said note and trust deed; that interest had been credited on said note down to August 1, 1911; that the interest due on said note on January 1, 1912, had not been paid; that Michael Kramp at the time of the filing of the bill was the legal holder and owner of said note and trust deed; that by reason of the default in the payment of the interest due he had elected to declare all of the indebtedness immediately due and payable; that there was due him on said principal note the sum of $17,000, together with interest thereon at the rate of five and one-half per cent. per annum, and also the further sum of $100 for solicitor's fee, together with costs and expenses; that said Kramp had a valid lien upon the premises for said sum, interest, solicitor's fees and costs, and was entitled to a foreclosure of the trust deed and to have the premises sold to satisfy said lien. The master further found that John Kramp had executed and delivered the warranty deed to said Kelley as above mentioned; that John Kramp had delivered said note and trust deed to Michael Kramp at the time and for the consideration as above mentioned; that on November 18, 1911, said Kelley and wife had executed and delivered the warranty deed to Louis Thexton as above mentioned; that there was a prior incumbrance upon said property as aforesaid, and that a note of $1,000 secured thereby fell due in January, 1912, and that an instalment of interest on said first incumbrance fell due at the same time, and that Louis Thexton paid a part of said interest. The master fur-

ther found that it was stipulated by counsel that, at the time of the delivery of said warranty deed to said Thexton by said Kelley, there was shown of record against the property in question two trust deeds, one securing an indebtedness of $25,000, of which $1,000 had been paid, and the other being the said trust deed from John Kramp to Waugh, trustee, dated July 1, 1911, securing an indebtedness of $17,000, payable July 1, 1915, and that there were no other trust deeds or mortgages of record and unreleased at said time. The master further found, as to the charge of conspiracy and fraud contained in the said answer of the two Thextons that "the said parties are free and clear of any acts of conspiracy, and * * * free and clear of any fraud in the premises"; and that the equities were with the complainant, Michael Kramp, and that he was entitled to the relief as prayed.

Harvey Strickler, for appellants.

Samuel Topliff, for appellees.

Mr. Justice Gridley delivered the opinion of the court.

The contentions made by counsel for defendants before the court upon exceptions to the master's report, and now here made, are, in substance; (1) That when on July 29, 1911, Thomas H. Kelley received said warranty deed from John Kramp and recorded the same, the said trust deed of John Kramp to Edwin L. Waugh, trustee, sought by these proceedings to be foreclosed, *was void* and was not then a lien upon the premises, and that, therefore, said Kelley then took title to the premises free from any lien of the trust deed, notwithstanding the fact that said warranty deed contained the recital that the conveyance was made "subject to two incumbrances, the principals thereof aggregating the sum of $42,000, upon which $1,000 has been paid"; and (2) that Louis Thexton, who subsequently received a

warranty deed from said Kelley, is in the same position as his grantor, Kelley, and that Thexton took title to the premises also free from any lien of said trust deed, notwithstanding the recital in the warranty deed to him that the conveyance was made "subject to incumbrances now aggregating $41,000 and accrued interest thereon."

After careful consideration, we are of the opinion that, under the somewhat peculiar facts of this case, the contentions cannot be sustained.

We do not think that as to Thomas H. Kelley the trust deed was void. It is disclosed by the evidence that Edwin L. Waugh was Kelley's attorney; that John Kramp, the owner of the premises subject to a first mortgage upon which $24,000 remained unpaid, had negotiations with Kelley relative to Kelley's purchase of Kramp's equity in the premises; that Waugh drafted the $17,000 note which was signed and indorsed by Kramp on July 1, 1911; that on this date John Kramp was actually indebted to the complainant, Michael Kramp, in the sum of $6,025; that Waugh also drafted the trust deed conveying the premises to himself as trustee and purporting to secure said note; that during the negotiations John Kramp and Kelley entered into a written contract wherein it was stated, in substance, that the consideration for the sale of Kramp's equity in the premises, *over and above the mortgages aggregating $41,000,* was 350 shares of the capital stock of a certain Illinois corporation, and *the interest from August still on the incumbrance;* that Waugh made the indorsement on said note that the interest thereon had been paid to August 1, 1911; that Kramp subsequently received said shares of stock; that Waugh drafted the warranty deed from Kramp to Kelley and took Kramp's acknowledgment thereto; that the warranty deed contained the recital that the conveyance was made subject to two incumbrances aggregating the net sum of $41,000; that said two in-

cumbrances formed a part of the consideration of $65,000 recited in said deed; that Kramp and Kelley went together to the recorder's office when the trust deed and the warranty deed was filed for record, and that they were both filed for record on July 29, 1911, at the same hour and minute and that the trust deed has the lower document number. While it is true that John Kramp did not deliver said note of $17,000 to the complainant, Michael Kramp, until about August 7, 1911, or about nine days after John Kramp delivered the warranty deed to Kelley, the evidence discloses that the complainant, in consideration of the transfer of the note to him, cancelled the indebtedness of $6,025 owing him by John Kramp, paid the latter $475 in currency and ultimately delivered to the latter 100 shares of the capital stock of Swift & Company, which was worth "a little above par" and was taken at an agreed valuation of $10,500,—all of which sums amount in the aggregate to the face of said note, $17,000. Under all the facts and circumstances in evidence we think that, when Kelley took the warranty deed from John Kramp, he did so with the understanding or agreement that there was a bona fide incumbrance upon the premises, in addition to said first mortgage of $24,000, to the extent of $17,000 with interest from August 1, 1911; that these incumbrances formed a part of the consideration for the property, in that the amount which he was required to pay to John Kramp at the time of the delivery of said warranty deed, either in money or property, was lessened to the extent of the amount of said incumbrances; and that, were Kelley now here seeking to have the premises freed from the lien of said trust deed, he would be estopped from questioning its validity. *Lang v. Dietz*, 191 Ill. 161, 166; *Pidgeon v. Trustees of Schools*, 44 Ill. 501, 502; *Essley v. Sloan*, 116 Ill. 391, 398; *Valentine v. Fish*, 45 Ill. 462, 468; *Ray v. Lobdell*, 213 Ill. 389, 395; *Foy v. Armstrong*, 113 Iowa 629, 631. And we do not think that the case of *Crawford v. Nimmons*, 180 Ill. 143, relied upon by

counsel for defendants, is authority for a different conclusion under the facts of the present case.

And we are of the opinion that the master's finding, confirmed by the court, that the charges of conspiracy and fraud, as contained in the answer of Thexton and wife, were not proved, is fully warranted by the evidence. And it appears that the $17,000 note, secured by said trust deed, was delivered to the complainant, Michael Kramp, about August 7, 1911; that part of the consideration for said note was then paid to John Kramp and the balance of the consideration, viz., the other 50 shares of the Swift & Company's stock, was delivered to him by complainant during the first part of October, 1911; that the warranty deed from Kelley to Thexton was not delivered until November 18, 1911; that at that time there was shown of record against the property two trust deeds, one securing a net first mortgage indebtedness of $24,000, and the other being the trust deed in question securing said note of $17,000, and that there were no other trust deeds or mortgages of record upon the property and unreleased, and that in said warranty deed to Thexton it was recited that the consideration was $65,000, and that the conveyance was made "subject to incumbrances now aggregating $41,000 and accrued interest thereon." And in the answer of the defendants it is alleged that Kelley represented to Thexton, before the warranty deed was delivered, that the property was worth "more than the apparent incumbrance upon the same, that the incumbrance was placed upon the property in good faith, and that the incumbrance represented actual value in the property," and that Thexton purchased the fee and gave in trade therefor clear lands of the value in excess of $15,000. Our conclusion is that the said trust deed, as against the Thextons, is a valid lien upon the premises, and that the court did not err in entering the decree of sale appealed from.

And we do not think that, under the facts of this case, the court erred in ordering that the receiver there-

tofore appointed remain in possession to collect the rents, etc., until the further order of the court.

The appellees have here assigned cross-errors, in which they contend that they should have been allowed interest upon said principal note from the date of the filing of the bill to foreclose at the rate of seven per cent. per annum, instead of at the rate of five and one-half per cent., as allowed by the master and confirmed by the court, and further contend that they should have been allowed a larger sum than $100 as solicitor's fees. Without discussion, we deem it sufficient to say that in our opinion, under the facts of this case, the contentions are lacking in substantial merit.

The decree of the Superior Court is affirmed.

*Affirmed.*